# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PEDIBRUSH LLC**<br>1061 Kasmir Avenue<br>Bensalem, PA 19020-4520 | : |
| | : |
| | : |
| **Plaintiff** | : |
| | : |
| v. | : |
| | : **CIVIL ACTION** |
| **CATALOG SOLUTIONS, INC.**<br>25 Walls Drive, Suite 1-C<br>Fairfield, CT 06824 | : |
| | : **Complaint for Monetary Damages<br>and Injunctive Relief** |
| and | : |
| | : |
| **WINNING SOLUTIONS, INC.**<br>4401 Diplomacy Road<br>Fort Worth, Texas 76155 | : |
| | : **NO.:** |
| | : |
| and | : |
| | : |
| **CURTIS A. CLARKE**<br>107 Woods End Road<br>Fairfield, Connecticut 06824 | : |
| | : |
| and | : |
| | : |
| **JESS CLARKE, III**<br>3605 Jaffa Drive<br>Sarasota, Florida 34239 | : |
| | : |
| and | : |
| | : |
| **NEW PRODUCT SOLUTIONS**<br>4401 Diplomacy Road<br>Fort Worth, Texas 76155 | : |
| | : |
| **Defendants** | : |
| | : |

Plaintiff, Pedibrush LLC, brings this action seeking monetary damages and injunctive

relief against the above captioned defendants and respectfully represents as follows:

1

## PARTIES

1.     Plaintiff is a Pennsylvania Limited Liability Company with its offices located at the above captioned address.

2.     Upon information and belief, defendant Catalog Solutions, Inc. is a Connecticut corporation engaged in the business of marketing vendors' products with its offices located at the above captioned address.

3.     Upon information and belief, defendant Winning Solutions, Inc. is a Texas corporation engaged in the warehousing of vendors' products and shipping of the same to the vendors' customers, with its offices located at the above captioned address.

4.     Upon information and belief, defendant Curtis A. Clarke is an individual residing at the above captioned address.

5.     Upon information and belief, defendant Jess Clarke, III is an individual is an individual residing at the above captioned address.

6.     Upon information and belief, defendant New Product Solutions is business entity with its principals being Curtis A. Clarke and Jess F. Clarke, III and with its office located at the above captioned address.

## JURISDICTION AND VENUE

7.     This court has jurisdiction based on diversity of citizenship under 28 U.S.C. 1332. Plaintiff and all defendants are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

8.     Upon information and belief beginning in September 2016 the defendants have advertised, promoted, marketed and sold their copycat "Miracle Foot Brush" throughout this jurisdiction by multiple means, all of which activity remains ongoing to date.

9.      Venue is proper under 28 U.S.C. 1391 because a substantial part of the events and actions giving rise to the claims raised herein occurred and continue to occur in this judicial district.

## FACTUAL ALLEGATIONS

10.     In Summer of 2010 plaintiff created, manufactured and ultimately marketed a product known as "PediBrush", a long handled brush with angulated bristles designed to enable the elderly and people otherwise physically challenged to more easily scrub their feet efficiently without experiencing discomfort by eliminating the need to remain in a bent-over position to perform this rudimentary daily task.

11.     In December 2010 the plaintiff marketed its "PediBrush" to the general public via an infomercial.  The infomercial generated enough interest from the viewing public to convince the plaintiff's principals that this product could be a huge success.

12.     Shortly after the infomercial aired the plaintiff was contacted by defendant Curtis Clark who represented himself as a marketing agent and claimed that he could greatly assist in increasing the national exposure of the plaintiff's product and thereby generate substantial additional sales of the same.

13.     On or about May 26, 2011, Curtis Clarke faxed the plaintiff an agreement prepared by him wherein the plaintiff would engage his company, defendant Catalog Solutions, Inc., for the purposes of actively promoting and soliciting sales of the plaintiff's 'PediBrush" to all existing and potential markets, including but not limited to, the catalog trade and adjunct marketing and distribution channels.  Plaintiff's principal executed the agreement and returned it to Curtis Clarke via fax.  That agreement is attached hereto as "P-1".  Attached as "P-2" are photographs showing plaintiff's product as it existed at that time along with purchasers' reviews for all times relevant herein.

14.     Curtis Clark then recommended that the plaintiff utilize the warehouse services of the defendant Winning Solutions, Inc., an entity for which his brother, the defendant Jess Clarke, III, was its president.

15.     For the year 2011 the plaintiff generated $5,354.76 in sales but due to expenses realized a $31,008.50 overall loss.

16.     For the calendar year 2012 the plaintiff generated sales totaling $90,990.63 but after expenses realized a loss of $20,260.88.

17.     For the calendar year 2013 plaintiff had fewer sales totaling $36,403.17 but also a much smaller loss after expenses of only $214.19, primarily due to manufacturing less new product.

18.     Despite growing interest from exposure in catalogs and a very respectable first time showing on QVC, the plaintiff realized early in 2013 that the challenge to make the company profitable depended upon reducing its costs, primarily among them being the excessive shipping and packaging costs.

19.     After much research the plaintiff's principals determined that the best solution to reduce their costs would be to split the "PediBrush" in half to both decrease the shipping costs from the manufacturer to the warehouse, and to further decrease the shipping costs from the warehouse to consumers by utilizing smaller boxes both less costly to purchase and less costly to ship.

20.     Plaintiff's principals then shared with Curtis Clarke their conclusion that splitting the "PediBrush" in half was the only viable way to make the sale of the same profitable.  The parties agreed that this would require creating a new mold for the mass manufacturing of the product, and when Curtis Clarke advised that he would be going to China on or about April 18, 2013 the plaintiff's principals authorized him to locate a manufacturer who could produce the new mold and continue with the mass production of the new split "PediBrush".

21.    Curtis Clarke then traveled to China and met with the existing Chinese manufacturer's agent (Wei) to determine if that manufacturer or another Chinese manufacturer could produce the new mold at a cost acceptable to the plaintiff and then carry on with mass manufacturing of the split 'PediBrush".

22.    Upon his return to the United States Curtis Clarke advised the plaintiff's principals that from what he discovered the cost to revise the mold would be extremely costly if not prohibitive and that he had no leads at all for them to pursue with any manufacturer in China or elsewhere.

23.    After receiving this devastating news from Curtis Clarke the plaintiff's principals undertook their own efforts to find a manufacturer who could produce the new two-piece mold at an acceptable and economically prudent cost.

24.    Between May 2013 and September 2013 the plaintiff's principals continually communicated with the defendant Curtis Clarke keeping him advised him of their progress with respect to finding a new manufacturer.  They promised to notify him once they had the new split "PediBrush" ready for sale.  Curtis Clarke indicated that was fine with him and he would go full speed ahead with marketing the new product as soon as it was ready.

25.    At no time while the plaintiff's manufacturing process was suspended did Curtis Clarke ever advise the plaintiff that due to this delay in manufacturing he could not and would not continue on as their agent.

26.    In January 2014, the plaintiff's principals advised Curtis Clarke that they had located a manufacturer which allow for production to begin in the very near future.  At about that same time they also notified the defendant Winning Solutions, Inc. that it should expect to begin receiving shipments of the plaintiff's new product soon.

27.     After their upbeat notices to the defendants in January 2014 the plaintiff's principals suffered the news that their presumptive new mold maker in China could not fulfill its pledge to produce the new mold as promised. Following this news the plaintiff's principals made repeated attempts to communicate with Curtis Clarke to inquire if he had made any new contacts who could help since last they spoke. The plaintiff's principals repeated attempts to speak with Curtis Clarke were unsuccessful and they received no communication from Curtis Clarke until summer of 2016, which communications are further detailed below.

28.     In early 2016, after many more months of extreme diligence and vetting of possible manufacturers, the plaintiff finally secured another manufacturer in China who could reliably produce the split "PediBrush" mold and manufacture mass quantities of the new product.

29.     The plaintiff's principals then reached out again to Curtis Clarke in a June 2016 e-mail advising him that they were ready to inventory product and anxious to re-launch the marketing for their new split "PediBrush". A copy of that e-mail is attached hereto as 'P-3".

30.     Following receipt of the plaintiff's e-mail, Curtis Clarke spoke with the plaintiff's principals by telephone on or about the last week of June 2016 wherein Curtis Clarke expressed his congratulations for their success and assured them that he would call the following week to discuss at greater length the marketing plans going forward.

31.     When the plaintiff's principals did not receive the promised call from the defendant Curtis Clarke they sent him another e-mail asking him what times would be good for arranging that call. A copy of that e-mail is attached hereto as 'P-4".

32.     When the defendant Curtis Clarke did not respond to that e-mail the plaintiff's principals left a series of voice mail messages for him between July and October 2016.

33.     During this same time the plaintiff's principals also left voice mail messages for defendant Jess Clark, III, advising him that their new two-piece "PediBrush" would soon be shipped from China to his warehouse and requesting his confirmation that the warehouse had current capacity for the shipment and that the shipping protocol/instructions remained the same as they had been in the past.

34.     The plaintiff's principals never received a call from Jess Clarke, III in response to their messages, but plaintiff's principal did speak with Jess Clarke's employee, Lori Paxson, who conveyed that Jess Clarke, III had received their messages and would soon return their call.

35.     Thereafter plaintiff's principals received no further communications from either Curtis Clarke or Jess Clarke, III.

36.     On or about mid-October 2016 plaintiff's principals discovered through a third party who was interested in selling the new split "PediBrush" product at his Amazon merchant site that a product similar to theirs was already selling on Amazon under the name "Miracle Foot Brush" with a web site address of "Miraclefootbrush.com".

37.     On or about October 26, 2018 plaintiff's principals discovered that the "Miracle Foot Brush" now being sold on line was a virtual mirror image of their product, and that proprietary images from the plaintiff's original 2013 website had been misappropriated and were now appearing at the website "Miraclefootbrush.com". Copies of the defendants' marketing images from October 2016 are attached hereto as "P-5".

38.     As shocked as plaintiff's principals were to discover that a competitor with an identical product had sprung up and misappropriated plaintiff's proprietary images, they were completely aghast when it became apparent that this new competing entity was had been created by and was now owned by none other than the defendants Curtis Clarke and his brother Jess Clarke, III.

7

39.     Plaintiff's principals next discovered that Curtis Clarke and Jess Clarke, III doing business as New Product Solutions had published a press release on or about September 2016 touting how their product was superior to the competition because "unlike its competitors, their extra- long, 30" Miracle Foot Brush can be separated into two parts, perfect for storage and on the go".  A copy of the Press Release is attached hereto as 'P-6".

40.     Upon information and belief, and at all times relevant hereto, Curtis Clarke while acting as the plaintiff's agent failed to disclose to the plaintiff that he had located and secured a foreign manufacturer which the plaintiff had authorized him to do on their behalf, who could, would and did ultimately create the two-piece mold that the plaintiff needed to sustain its business.

41.     Upon information and belief, and at all times relevant hereto, Curtis Clarke while acting as the plaintiff's agent used the knowledge given to him by the plaintiff to secure, not for the plaintiff's benefit but instead solely for the gain of the defendants, a foreign manufacturer, who could, would and did ultimately create the two-piece mold at an effective cost thereby enabling the defendants to market a mirror product and compete directly against the plaintiff.

42.     Immediately after discovering this deceit the plaintiff engaged an attorney to send a "Cease and Desist" letter to the defendants to which there was no reply.  A copy of that November 4, 2016 letter authored by James L. Ray, Esquire is attached hereto as "P-7".

43.     When no response to that "Cease and Desist' letter was forthcoming the plaintiff engaged the undersigned to send yet another letter addressing the same issues.  That letter did prompt an exchange of e-mail between counsel and a phone conversation after which no accord was reached with respect to the plaintiff's demand that the defendants immediately cease all sales of their 'Miracle Foot Brush".  Copies of the aforementioned correspondence are attached hereto as "P-8".

44.     To date the defendants continue to sell their 'Miracle Foot Brush' and advertise it as superior because of its unique design, a design stolen from the plaintiff by the defendant Curtis Clarke from information gained while he was the plaintiff's agent.

45.     As a result of the defendants' above described actions the plaintiff has suffered severe financial losses and will continue to irreparably suffer the same should the defendants not be ordered to "Cease and Desist" all sales of their "Miracle Foot Brush".

**COUNT I**
**BREACH of CONTRACT**
**PediBrush, LLC v. Curtis A. Clarke and Catalog Solutions, Inc.**

46.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the averments contained in the preceding Paragraphs 1 through 45.

47.     On May 26, 2011 the plaintiff's President, Christian Klemash, executed the written contract attached hereto as 'P-1' and delivered the same to defendant Curtis Clarke.

48.     Upon information and belief no person on behalf of the defendant Catalog Solutions, Inc. ever executed the written contract or ever delivered a fully executed copy of the same to the plaintiff.

49.     At all times relevant hereto, notwithstanding the plaintiff's lack of receipt of a fully executed written contract, the plaintiff relied on the oral representations, correspondence and actions taken by Curtis Clarke in forming the reasonable belief that he had verbally and thereby contractually agreed to act as their agent.

50.     At no time did Curtis Clarke or any person ostensibly acting on behalf of the defendant Catalog Solutions, Inc., notify the plaintiff by any means that their contractual relationship was being terminated.

51.     In the absence of express notice of termination of the agency agreement by one party to the other, the agent's duties to the principal remain in place.

52.     Even when an agent alleges that the contractual agency relationship was terminated, the agent's duty under that contractual relationship requires that agent refrain from taking any advantage of confidential information shared with the agent during the term of agency, especially when that information is later employed by the agent in direct competition against his former principal.

53.     By misappropriating the plaintiff's proprietary designs and product images, and by utilizing information gained solely from their role as plaintiff's agent, and by creating a product for competing sale derived from that inside knowledge, the defendants breached their contractual duties owed to the plaintiff irrespective whether those duties arose from a written or verbal contract.

WHEREFORE, plaintiff PediBrush, LLC prays for judgment against defendants Curtis A. Clarke and Catalog Solutions, Inc. and requests that this Honorable Court:

A.      Enter an order declaring that the defendants Curtis A. Clarke and Catalog Solutions, Inc. have breached the terms of an existing contract between them and the plaintiff by the acts complained of herein;

B.      Enter an order preliminarily and permanently enjoining the defendants Curtis A. Clarke and Catalog Solutions, Inc. and their principals, agents, servants, employees, attorneys, representatives, successors and assigns from selling, marketing for sale, or participating in the sale of the product known as "Miracle Foot Brush", and from in any manner disparaging the plaintiff or its product.

10

C.      Enter an order requiring the defendants Curtis A. Clarke and Catalog Solutions,

Inc. to pay to the plaintiff all of its damages resulting from the wrongful conduct and breach of

contract by the defendants ,

Curtis A. Clarke and Catalog Solutions, Inc.; and

D.      Award all other and further relief to the plaintiff as this Honorable Court may

deem just and proper under the circumstances.

## COUNT II
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
## PediBrush, LLC v. Curtis A. Clarke and Catalog Solutions, Inc.

54.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the averments

contained in the preceding Paragraphs 1 through 53.

55.     Defendants owed the plaintiff a duty of good faith and fair dealing with respect to the

formation and performance of any verbal and written agreement with respect to the plaintiff's

proprietary property and ideas to which the defendants became privy only through their

contractual relationship with the plaintiff.

56.     By the acts set forth above, the defendants have breached their duty of good faith and fair

dealing.

57.     As a direct and proximate result the plaintiff has been damaged.

WHEREFORE, plaintiff PediBrush, LLC prays for judgment against defendants Curtis

A. Clarke and Catalog Solutions, Inc. and requests that this Honorable Court:

A.      Enter an order declaring that the defendants Curtis A. Clarke and Catalog

Solutions, Inc. have breached their duty of good faith and fair dealing by the acts complained of

herein;

B.      Enter an order preliminarily and permanently enjoining the defendants Curtis A.

Clarke and Catalog Solutions, Inc. and their principals, agents, servants, employees, attorneys,

representatives, successors and assigns from selling, marketing for sale, or participating in the

sale of the product known as "Miracle Foot Brush", and from in any manner  disparaging the

plaintiff or its product.

C.      Enter an order requiring the defendants Curtis A. Clarke and Catalog Solutions,

Inc. to pay to the plaintiff all of its damages resulting from the wrongful conduct of the

defendants Curtis A. Clarke and Catalog Solutions, Inc.; and

D.      Award all other and further relief to the plaintiff as this Honorable Court may

deem just and proper under the circumstances.

## COUNT III
## BREACH of FIDUCIARY DUTY
### PediBrush, LLC v. Curtis A. Clarke and Catalog Solutions, Inc.

58.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the averments

contained in the preceding Paragraphs 1 through 57.

59.     Defendants Curtis A. Clarke and Catalog Solutions, Inc. acting as plaintiff's agents

agreed to promote and solicit sales of the plaintiff's long handled 30" PediBrush product, and

assured the plaintiff that defendants' would provide full market exposure for its product by

placing it into the stream of existing and potential markets through catalog sales and/or other

adjunct marketing and distribution channels.

60.     As plaintiff's agents, the defendants Curtis A. Clarke and Catalog Solutions, Inc. owed a

fiduciary duty to the plaintiff to act for its benefit in all matters within the scope of the agency

relationship.

61.     The defendants, Curtis A. Clarke and Catalog Solutions, Inc., were required to act with the utmost good faith in carrying out the plaintiff's interests and to promptly advise the plaintiff of all material facts and circumstances known to the defendants which may have any impact on the plaintiff's interests.

62.     The defendants, Curtis A. Clarke and Catalog Solutions, Inc., at all times relevant herein were subject to a duty not to compete their principal [the plaintiff] concerning the subject matter of their agency.

63.     At all times during their agency with the plaintiff the defendants had a duty to not in any manner, prepare to take actions or take actions that in any way might assist them in competing with the plaintiff after any termination of the agency relationship.

64.     Upon information and belief, the defendants, Curtis A. Clarke and Catalog Solutions, Inc., breached their fiduciary duties when they withheld from the plaintiff the critical information that they had acquired during their term and scope of their agency related to potential sources that the defendants had discovered would be available to the plaintiff for use in manufacturing its product, and thereafter used that withheld information to create their own product to directly compete against the plaintiff.

65.     As a direct and proximate result of the defendants' breach of their fiduciary duty, the plaintiff has suffered actual and prospective damages in an amount in excess of One Hundred Fifty Thousand ($150,000.00) Dollars.

WHEREFORE, plaintiff PediBrush, LLC prays for judgment against defendants Curtis A. Clarke and Catalog Solutions, Inc. and requests that this Honorable Court:

A.      Enter an order declaring that the defendants Curtis A. Clarke and Catalog

Solutions, Inc. have breached their fiduciary duties as agents to the plaintiff by the acts

complained of herein;

B.      Enter an order preliminarily and permanently enjoining the defendants Curtis A.

Clarke and Catalog Solutions, Inc. and their principals, agents, servants, employees, attorneys,

representatives, successors and assigns from selling, marketing for sale, or participating in the

sale of the product known as "Miracle Foot Brush", and from in any manner  disparaging the

plaintiff or its product.

C.      Enter an order requiring the defendants Curtis A. Clarke and Catalog Solutions,

Inc. to pay to the plaintiff all of its damages resulting from the wrongful conduct of the

defendants Curtis A. Clarke and Catalog Solutions, Inc.; and

D.      Award all other and further relief to the plaintiff as this Honorable Court may

deem just and proper under the circumstances.

**COUNT IV**
**DECEIT**
**PEDIBRUSH, LLC v. Curtis Clarke**

66.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the averments

contained in the preceding Paragraphs 1 through 65.

67.     Upon information and belief defendant Curtis Clarke falsely represented to the plaintiff

that the desired mold manufacturing that plaintiffs required with respect to splitting their original

"PediBrush' in half could not be performed in China because costs were simply too high,

implying falsely that no manufacturers were interested in undertaking that project.

68.     Upon information and belief, this false and further misleading statement was made with

the intention to harm the plaintiff, and delay plaintiff's efforts to produce a two-piece

"PediBrush" while the defendant used the plaintiff's subsequent down time to his own advantage in creating his own competing two-piece foot brush, ostensibly created and manufactured by a Chinese company.

69.   As a result of the defendant's deceitful actions the plaintiff has suffered and continues to suffer severe financial harm.

WHEREFORE, plaintiff PediBrush, LLC prays for judgment against defendant Curtis A. Clarke and requests that this Honorable Court:

A.   Enter an order declaring that the defendant Curtis A. Clarke has engaged in deceitful conduct against the plaintiff by the acts complained of herein;

B.   Enter an order preliminarily and permanently enjoining the defendant and his principals, agents, servants, employees, attorneys, representatives, successors and assigns from engaging in any further acts of idea misappropriation and from selling, marketing for sale, and from participating in the sale and/or warehousing and shipping of the product known as "Miracle Foot Brush", and from in any manner disparaging the plaintiff or its product.

C.   Enter an order requiring the defendant to pay to the plaintiff all of its damages resulting from his wrongful and deceitful conduct; and

D.   Award all other and further relief to the plaintiff as this Honorable Court may deem just and proper under the circumstances.

## COUNT V
## IDEA MISAPPROPRIATION
## PediBrush, LLC v. All Defendants

70.   Plaintiff adopts and incorporates by reference, as if fully set forth herein, the averments contained in the preceding Paragraphs 1 through 69.

71.     The plaintiff's idea to split its 30" long 'PediBrush" in half by creating a mold that would produce a product that could hinge open to that same unique 30" original length was as novel and concrete as the original product design itself in that it solved the issue of excessive shipping and packaging costs while also creating a space saving option for the user while preserving the benefit to the user of having a 30" long brush to scrub and otherwise care for their feet.

72.     The plaintiff's above described idea was misappropriated by the defendants.

73.     The plaintiff made a substantial investment of time, effort and money into creating its idea and developing its proprietary end product that the defendants misappropriated such that the court can characterize the idea and end product as a kind of property right.

74.     The defendants appropriated the plaintiff's proprietary plans and ideas with little cost or effort having gained knowledge of the same from the inside information acquired by Curtis Clarke and Catalog Solutions, Inc. while working as the plaintiff's agents.  The court can thus characterize the defendants' actions as reaping where they have not sown.

75.     The defendants have injured the plaintiff by this misappropriation.

76.     Upon information and belief, the defendants have been unjustly enriched as a result of their wrongful misappropriation to the extent that in each defendant derives benefit either financially or in some other positive manner, including but not limited to, the prestige of appearing to be the creators of a very uniquely designed product, receiving profit from the sale of the same, reaping income from the warehousing of the product, and by combining operations to save on costs in ways that the plaintiff could not have done.

WHEREFORE, plaintiff PediBrush, LLC prays for judgment against defendants and requests that this Honorable Court:

16

A.     Enter an order declaring that the defendants have engaged in idea misappropriation by the acts complained of herein;

B.     Enter an order preliminarily and permanently enjoining the defendants and their principals, agents, servants, employees, attorneys, representatives, successors and assigns from engaging in any further acts of idea misappropriation and from marketing for sale, and from participating in the sale and/or warehousing and shipping of the product known as "Miracle Foot Brush", and from in any manner disparaging the plaintiff or its product.

C.     Enter an order requiring the defendants to pay to the plaintiff all of its damages resulting from their wrongful conduct;

D.     Award all other and further relief to the plaintiff as this Honorable Court may deem just and proper under the circumstances.

**COUNT V**
**UNJUST ENRICHMENT**
**<u>PediBrush, LLC v. All Defendants</u>**

77.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the averments contained in the preceding Paragraphs 1 through 76.

78.     The plaintiff's original product creation was unique to the marketplace and had value.

79.     The plaintiff's idea to improve its original product to both increase profitability and appeal to the consuming public was unique and proprietary and had value.

80.     The plaintiff invested time, money and effort in creating both its original product and the revisions to the same.

81.     The plaintiff conferred benefits upon the defendants through the acts set forth above.

17

82.     The acceptance and retention of such benefits under the circumstances set forth in this complaint make it inequitable for the defendants to retain such benefits without payment of substantial value to the plaintiff.

83.     The defendants have been unjustly enriched as a result of their accepting, taking and using of the plaintiff's proprietary ideas, product knowledge and applications of the same without compensation to the plaintiff.

WHEREFORE, plaintiff PediBrush, LLC prays for judgment against defendants and requests that this Honorable Court:

A.      Enter an order declaring that the defendants have been unjustly enriched by the acts complained of herein;

B.      Enter an order preliminarily and permanently enjoining the defendants and their principals, agents, servants, employees, attorneys, representatives, successors and assigns from engaging in any further acts of idea misappropriation and from selling, marketing for sale, and from participating in the sale and/or warehousing and shipping of the product known as "Miracle Foot Brush", and from in any manner disparaging the plaintiff or its product.

C.      Enter an order requiring the defendants to pay to the plaintiff all of its damages resulting from the wrongful conduct of the defendants; and

D.      Award all other and further relief to the plaintiff as this Honorable Court may deem just and proper under the circumstances.

## COUNT VI
## TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS
### PediBrush, LLC v. All Defendants

84.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the averments contained in the preceding Paragraphs 1 through 83.

18

85.    By the above recited acts each of the defendants have attempted to, and have, tortuously interfered with the plaintiff's prospective contractual rights with various manufacturers and various purchasers and users of the plaintiff's product.

86.    Upon information and belief it was the purpose and intent of each defendant to harm the plaintiff by usurping the potential manufacturer(s) and customers who might otherwise have been available to bring benefit to the plaintiff, and thereby preventing such prospective contractual relations from occurring.

87.    The intentional acts of the defendants in rushing to market with their product with full knowledge that the plaintiff was not yet ready to embark on a full throttled marketing campaign, and by implying in their marketing advertisements and publicity releases, that the their product was unique and superior to all other similar products when they knew that their product was nothing more than a misappropriated mirror image of the plaintiff's product, caused the plaintiff to lose potential customers thereby denying it substantial revenue.

WHEREFORE, plaintiff PediBrush, LLC prays for judgment against defendants and requests that this Honorable Court:

A.    Enter an order declaring that the defendants have engaged in tortious interference with prospective contractual relationships by the acts complained of herein;

B.    Enter an order preliminarily and permanently enjoining the defendants and their principals, agents, servants, employees, attorneys, representatives, successors and assigns from selling, marketing for sale, and from participating in the sale and/or warehousing and shipping of the product known as "Miracle Foot Brush", and from in any manner disparaging the plaintiff or its product.

C.      Enter an order requiring the defendants to pay to the plaintiff all of its damages resulting from the wrongful conduct of the defendants; and

D.      Award all other and further relief to the plaintiff as this Honorable Court may deem just and proper under the circumstances.

## COUNT VII
## CIVIL CONSPIRACY
## PediBrush, LLC v. All Defendants

88.     Plaintiff adopts and incorporates by reference, as if fully set forth herein, the averments contained in the preceding Paragraphs 1 through 87.

89.     Curtis Clarke and his brother Jess F. Clarke, III are the principals in New Product Solutions which entity is listed as the contact for information with respect to the defendants' "Miracle Foot Brush".

90.     Upon information and belief, Curtis Clarke and his brother Jess F. Clarke, III have worked together for years coordinating the warehousing and shipping of product for vendors for whom Curtis Clarke has served as their marketing agent.

91.     Upon information and belief and at all times relevant hereto, Curtis Clarke shared with his brother

Jess F. Clarke, III, individually and in their roles as principals of the other defendants, proprietary information acquired from the plaintiff by Curtis Clarke arising from his position as the plaintiff's agent.

92.     The defendants intentionally entered into a conspiracy to produce, market, warehouse and sell their "Miracle Foot Brush" which they all knew was nothing more than a misappropriated mirror image of the plaintiff's proprietary design for its "PediBrush".

93.     The defendants engaged in a number of overt acts in furtherance of its conspiracy including but not limited to, (1) failing to disclose to the plaintiff that defendants had located and were working with a Chinese manufacturer who could produce the two-piece mold that Curtis Clarke had prior told the plaintiff's principals was not possible, and (2) intentionally maintaining the secrecy of their manufacturing of a competing mirror image product, principally by refusing to return the plaintiff's calls to Curtis Clarke and Jess F. Clarke, III with respect to plaintiff's inquiries over marketing and warehousing concerns, and (3) advertising and selling a product whose most significant  selling feature was the split two piece handle which in defendants' own words "was unlike its competitors" making the defendants' product the one that was "perfect for storage and on the go", all of which promotional language was untrue as defendants knew that their product was not original but rather was borne from defendants' knowingly and wrongful misappropriation of the plaintiff's uniquely original 30" long foot scrubbing "PediBrush" and plaintiff's proprietary idea to split that original 'PediBrush" in half for all the reasons set forth herein.

94.     As a result of the defendants' actions the plaintiff has suffered damages, both consequential and incidental.

        WHEREFORE, plaintiff PediBrush, LLC prays for judgment against defendants and requests that this Honorable Court:

        A.      Enter an order declaring that the defendants have engaged in a civil conspiracy by the acts complained of herein;

        B.      Enter an order preliminarily and permanently enjoining the defendants and their principals, agents, servants, employees, attorneys, representatives, successors and assigns from selling, marketing for sale, and from participating in the sale and/or warehousing and shipping of

the product known as "Miracle Foot Brush", and from in any manner disparaging the plaintiff or its product.

  C.  Enter an order requiring the defendants to pay to the plaintiff all of its damages resulting from the wrongful conduct of the defendants; and

  D.  Award all other and further relief to the plaintiff as this Honorable Court may deem just and proper under the circumstances.

**COUNT VIII**
**Motion for Temporary and Permanent Injunction**
**PediBrush, LLC v. All Defendants**

95.  Plaintiff adopts and incorporates by reference, as if fully set forth herein, the averments contained in the preceding Paragraphs 1 through 94.

96.  Plaintiff will suffer irreparable injury if the defendants are not restrained from sale of the "Miracle Foot Brush" which was produced only after the defendants unlawfully misappropriated the plaintiff's proprietary property.

97.  Plaintiff has already been deprived of a lost opportunity for revenue since the defendants began selling the "Miracle Foot Brush" tin September 2016.  The plaintiff will continue to suffer more injuries such as loss of future sales and the loss of goodwill, and these injuries are irreparable because there exists no exact measure of money damages for the same, and therefore the plaintiff requires both a remedy at law and equity, the latter being required to prevent more inexact damages from accruing while the plaintiff's claims for money damages at law are decided.

98.  There is a substantial likelihood that the plaintiff will prevail on the merits.

99.  The threatened harm to the plaintiff outweighs the harm, if any, that the requested injunction would inflict upon the defendants.  Defendants have misappropriated and used

22

plaintiff's ideas and knowledge arising from a fiduciary relationship that two of the defendants had with the plaintiff, and the defendants' wrongdoings provided them an unfair advantage over the plaintiff by allowing them to get to the market first, and thereby gaining a significantly higher listing on web sale sites by virtue of their earlier appearance and longer history sales when they had no competition selling the unique product that they had wrongfully misappropriated and copied from the plaintiff.

100.    Issuance of the requested injunction will not disserve the public interest, but rather protect and serve that interest because the injunction will serve notice that the courts will protect those persons who have created and will create unique products through their sheer innovation and proprietary ideas, but not those who unlawfully misappropriate that proprietary property, especially when that misappropriation arises from the existence of a fiduciary relationship between the parties.

101.    The issuance of the requested temporary injunction will preserve the status quo pending trial on the merits.

WHEREFORE, plaintiff PediBrush, LLC prays that this Honorable Court:

A.    Enter an order preliminarily and permanently enjoining the defendants and their principals, agents, servants, employees, attorneys, representatives, successors and assigns from selling, marketing for sale, and from participating in the sale and/or warehousing and shipping of the product known as "Miracle Foot Brush", and from in any manner disparaging the plaintiff or its product; and

B.    Enter an order requiring the defendants to pay to the plaintiff all of its damages resulting from the wrongful conduct of the defendants; and

23

C.     Award all other and further relief to the plaintiff as this Honorable Court may

deem just and proper under the circumstances.

Dated: 11|7|17

Respectfully submitted,

E. William Hevenor, Esquire
ID#: 43202
2 Horseshoe Lane
Paoli, PA 19301
610-251-9930
215-432-4028 cell
billhevenor@comcast.net
Attorney for Plaintiff

Mark T. Sophocles, Esquire
ID#: 74998
21 Industrial Blvd #201
Paoli, PA 19301
610- 651-0105
215-880-8825 cell
mark@marksophocles.com
Attorney for Plaintiff

## VERIFICATION

The undersigned hereby states that he is a duly authorized officer of the plaintiff in the foregoing captioned matter and that the averments contained in the foregoing Complaint are true and correct to the best of his knowledge, information and belief. He further states that he is aware that false statements herein are made subject to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

Dated: 11/6/17

Name: Louis Esposito

Title: Member / CFO